885 So.2d 459 (2004)
Thomas HALLOCK, Appellant,
v.
HOLIDAY ISLE RESORT & MARINA, INC., et al., Appellees.
No. 3D03-589.
District Court of Appeal of Florida, Third District.
October 27, 2004.
*460 Tom Woods, Jacksonville, for appellant.
John A. Jabro, Tavernier; and Rogers, Morris & Ziegler, and Mark F. Booth, Fort Lauderdale, for appellees.
Before FLETCHER, RAMIREZ, and SHEPHERD, JJ.
RAMIREZ, J.
Thomas Hallock appeals the trial court's Order granting the defendants' Motion for Summary Judgment and the Summary Final Judgment entered for the defendants, the Order dismissing with prejudice Hallock's tortious interference claim, and the Order denying Hallock's motion to reconsider dismissing Hallock's tortious interference claim. We affirm all three of the trial court's orders, but because we find there was a genuine issue of material fact regarding the breach of fiduciary duty issue, we reverse the summary judgment entered in favor of Holiday Isle as to that count only. In addition, we dismiss without prejudice the appeal against defendant Rip Tosun.

I. FACTS AND PROCEDURE
In 1984, Holiday Isle Resort & Marina, Inc., one of the defendants in the trial court, entered into a "Joint Venture Agreement" with another defendant, Rip Tosun, to own and operate a restaurant called Rip's  A Place For Ribs (Rip's), located at Holiday Isle Resort & Marina, Windley Key, Islamorada, Florida. Under the 1984 joint venture agreement, Tosun was to operate the restaurant as a partnership, each party owning fifty percent interest. The agreement would expire in five years. The joint venture agreement provided that "Tosun may not assign or alienate his interest in the Venture, and in the event of death of Tosun, the Venture shall terminate."
The joint venture was later extended and modified by an undated "Extension of Modification of Joint Venture Agreement," which limited the extension periods to one-year, effective March 1, 1996. During the time period that Rip's was in business, it was managed and operated by Tosun. During this time, Holiday Isle owned and operated at least four other restaurants and five other bars and various food kiosks, all located on the Holiday Isle Resort property.
*461 In 1997, Tosun entered into a Contract for Sale and Purchase whereby Tosun sold fifty percent of his half interest in Rip's to Thomas Hallock, the plaintiff in the trial court. That sale provided that in return for payments totaling $125,000, Hallock would receive fifty-percent of Tosun's interest in Rip's, as well as continue to receive his present salary. This purchase agreement granted Hallock the option to purchase Tosun's remaining interest in Rip's, subject to Holiday Isle's consent. Hallock admits that while he asked for Holiday Isle's consent to purchase Tosun's remaining interest in Rip's, Holiday Isle never responded to his request for Holiday Isle's consent.
In March of 1999, Tosun informed Hallock that Tosun was going to open and manage the Olde Florida Steakhouse on the Howard Johnson's property, which was adjacent to Rip's. Tosun told Hallock that he and Holiday Isle were opening the Olde Florida Steakhouse to protect Rip's because if the Howard Johnson's property was leased to a chain restaurant business, it would be detrimental for Rip's and the other restaurants in the resort.
Holiday Isle also ordered that the breakfast shift cease at Rip's and a breakfast shift was started at the Steakhouse. In addition, the breakfast cook was moved from Rip's and the head waitress was also moved. Other employees and equipment were also shifted to the Steakhouse.
Hallock objected to the partners about the cessation of the breakfast shift and Holiday Isle's lack of response to his request for consent to his purchase. Hallock alleged that personnel and equipment were diverted from Rip's to the Steakhouse to increase profits of the Steakhouse, to the detriment of Rip's. Holiday Isle responded by threatening to terminate the agreement. On March 1, 2000, Holiday Isle terminated the joint venture agreement.
Hallock sued Holiday Isle, Tosun and Joe Roth, Jr., alleging claims for tortious interference, fraud, breach of contract, libel and slander. After several motions to dismiss, amended complaints and motions for summary judgment, the trial court disposed of all counts except Hallock's breach of contract and breach of fiduciary duty against Tosun. Also pending is Tosun's counterclaim against Hallock for breach of contract.

II. AS TO TOSUN
First, with respect to Tosun, we agree with his position that the appeal against him is premature. The rule in Florida is that an appeal may be taken only from orders and judgments that are final, except as otherwise provided by statute. See Howard v. Ziegler, 40 So.2d 776, 777 (Fla.1949). A judgment or order is final when it adjudicates the merits of the case, disposes of the pending action, and leaves nothing further to be done by the trial court. Id.; Southwinds Riding Academy v. Schneider, 507 So.2d 782, 783 (Fla. 3d DCA 1987).
Florida Rule of Appellate Procedure 9.110(k) provides that, "partial final judgments are reviewable either on appeal from the partial final judgment or on appeal from the final judgment in the entire case." However, Florida case law holds that this exception only applies to partial judgments which are unrelated to the remaining portions of the case. See Bay & Gulf Laundry Equip. Co., Inc. v. Chateau Tower, Inc., 484 So.2d 615, 616 (Fla. 2d DCA 1985). Thus, not all partial judgments are immediately appealable.
In the case before us, as it applies to Tosun, the January 28, 2003 Order Granting Defendants' Motion for Summary Judgment and Summary Final Judgment is not a final order and is not appealable *462 under Florida Rule of Appellate Procedure 9.110. This order, which is the only order for which Hallock seeks review as to Tosun, does not dispose of Hallocks' claims against Tosun for breach of contract and breach of fiduciary duty. Nor does the January 28, 2003 order dispose of Tosun's counterclaim against Hallock for breach of contract. Thus, the order under review is a partial summary judgment as to Tosun. Hallock's claims against Tosun and Tosun's counterclaim against Hallock are based upon the parties' conduct relating to the January 27, 1997 contract for sale and purchase whereby Hallock agreed to purchase Tosun's interest in the Rip's restaurant. Thus, the January 28, 2003 partial summary judgment in favor of Tosun against Hallock on Hallock's claims of defamation and fraud in the inducement, which are interdependent with Hallock's remaining claims of breach of contract and breach of fiduciary duty against Tosun, is not a final order and is not immediately appealable. Furthermore, this order is not one of the enumerated non-final orders under Florida Rule of Appellate Procedure 9.130(a)(3) which this Court is authorized to review.
Consequently, we find that this Court is without jurisdiction to review Hallock's appeal as it relates to Tosun. Accordingly, we dismiss without prejudice the appeal as to Tosun.

III. AS TO HOLIDAY ISLE
Next, turning to Hallock's appeal as it relates to Holiday Isle, we find merit to Hallock's breach of fiduciary duty issue. Hallock contends that as a matter of law, Holiday Isle owed him a fiduciary duty and that there is a genuine issue of material fact as to whether Holiday Isle breached its fiduciary duty to Hallock, thus precluding summary judgment. We agree with Hallock that as a matter of law, a joint adventurer such as Holiday Isle owes a fiduciary duty to the other partners not to open a competing restaurant and not to divert assets of the joint venture to that competing restaurant. In addition, the record before us reflects a genuine issue of material fact regarding whether Holiday Isle breached this duty.
As previously discussed, Hallock and Holiday Isle entered into a joint venture agreement. When Hallock purchased half of Tosun's interest, he became a partner in the partnership. Although joint ventures and partnerships are separate legal entities, both are governed by the same rules of law. As such, the laws governing partnerships are applicable to joint ventures. See Kislak v. Kreedian, 95 So.2d 510, 514 (Fla.1957). They are both governed by the Florida's Revised Uniform Partnership Act, chapter 620, Florida Statutes. Regarding the general duties and obligations of joint adventurers toward each other, they, like co-partners owe to one another, as long as the relationship continues, the duty of the finest and highest loyalty. See Donahue v. Davis, 68 So.2d 163, 171 (Fla.1953). According to section 620.8404(2), Florida Statutes (2000), a partner's duty of loyalty to the partnership and the other parties includes, without limitation the following:
(a) To account for the partnership and hold as trustee for the partnership any property, profit, or benefit derived by the partner in the conduct ... or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
(b) To refrain from dealing with the partnership in the conduct... of the partnership business as or on behalf of a party having an interest adverse to the partnership; and
(c) To refrain from competing with the partnership in the conduct of the partnership *463 business before the dissolution of the partnership.
In light of this, we agree with Hallock that as a matter of law, Holiday Isle had a fiduciary duty to Hallock. Specifically, section 620.8404(2)(c) prevented the partners in this joint venture from competing against each other.
Next, turning to whether the summary judgment standard was met by Holiday Isle, we follow the long-standing principle that summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). As such, the standard of review here is de novo. Id.
A complete review of the record here reveals that there is a genuine issue of material fact as to whether Holiday Isle breached its fiduciary duty to Hallock in opening a competing restaurant next door to Rip's, the Steakhouse, and in diverting assets and employees from the partnership to the Steakhouse.
Hallock stated in his affidavit submitted in opposition to the defendants' motion for summary judgment that prior to his purchasing Rip's, he was told by Joe Roth, one of the owners and acting director of Holiday Isle, that Holiday Isle was going to close Howard Johnson's and turn that location into an executive office building. Hallock testified that the Steakhouse drew valuable employees from Rip's depriving it of important staff. He was never consulted prior to the decision to move the breakfast shift from Rip's to the Steakhouse. Other employees and equipment were moved from Rip's to the Steakhouse. Hallock testified that prior to his entering the Purchase and Sale Agreement, Holiday Isle representatives indicated to him that they would continue the business beyond its current term and that Rip's would continue as a viable enterprise. He further asserts in his affidavit that prior to his signing the Purchase and Sale Agreement, neither Tosun nor Holiday Isle told him that they would open a competing enterprise next door or else he would not have entered into the Purchase and Sale Agreement. Thus, we find that, at the very least, there is a genuine issue of material fact as to what the scope of the duties under the joint venture agreement was and whether, in fact, Holiday Isle breached its fiduciary duty by moving employees and equipment.
In sum, we find that Holiday Isle owed a fiduciary duty to Hallock under section 620.8404(2), Florida Statutes (2000). We further find that there are genuine issues of material fact as to whether Holiday Isle breached that duty.

IV. CONCLUSION
Accordingly, we reverse the final summary judgment entered in favor of Holiday Isle as to the breach of fiduciary duty count. We affirm the final summary judgment order in all other respects, as well as affirm the order dismissing with prejudice Hallock's tortious interference claim and the order denying Hallock's motion to reconsider dismissing Hallock's tortious interference claim. In addition, we dismiss without prejudice the appeal against defendant Rip Tosun.
Affirmed in part, reversed in part, dismissed in part.
FLETCHER, J., concurs.
(SHEPHERD, J., dissenting in part).
I agree with the majority that the three orders of the trial court should be affirmed. However, unlike the majority, I would affirm them in all respects. I disagree *464 that the facts of this case create a jury question on the breach of fiduciary duty count.
A confidential and fiduciary relationship must be established by competent, substantial evidence, and the burden is upon the party asserting the existence of such relationship to affirmatively prove it. Kislak v. Kreedian, 95 So.2d 510, 514-15 (Fla.1957). Here, there is no disagreement that Hallock has proven that a joint venture relationship existed via the Joint Venture Agreement. The source of contention lies in the extent and nature of the fiduciary duty owed since the joint venture itself is a creature whose scope and often "shelf life" are limited.
In this case, the nomenclature of the agreements as between Hallock and Tosun, and Tosun and Holiday Isle, declare that the arrangement was to be a "joint venture." From that, the majority makes a leap in logic, in which I cannot join, that because Hallock and Tosun agreed to split the profits with each owning fifty percent, ergo, a partnership was born. In effect, the majority is rewriting the underlying contract by treating the joint venture as a partnership, and indistinguishably blurring the lines between the two concepts, when they are not the same thing.
"The outstanding difference between a joint venture and a partnership is that the former relates to a single transaction, although it may comprehend a business to be continued over several years, while the latter relates to a general and continuing business of a particular kind, although there may be a partnership for a single transaction." Id. In this case, because the agreements expressly state that they contemplate a "joint venture," they implicitly limit themselves to a single common purpose  the continued operation and development of Rips restaurant, and that alone. "A joint venture is an association of persons or legal entities to carry out a single business enterprise for profit." 8 Fla.Jur.2d Business Relationships § 744 (2002).
[A] joint venture must be distinguished from a partnership. Even though it has been said that a joint venture is a relationship in the nature of a limited partnership, joint venture and partnership are separate legal relationships. The relationship of a joint venture is generally more informal than the one that exists between partners, and some of the incidents of partnership do not, or may not, apply.... The chief distinction is that a joint venture is usually limited to a single transaction, whereas a partnership is ordinarily formed for the transaction of a general and continuing business.
Considered from another viewpoint, the distinction between the two relationships exists in their respective scopes. Joint venture differs from partnership in that it has a limited and specific object in view; it is a partnership of limited scope ordinarily terminating when the objects of its creation have been accomplished.
Id. at § 746.
In that sense, all of the parties  Hallock, Tosun and Holiday Isle  leave themselves the right to maintain, or in the future to establish, any other restaurants, even competing restaurants, exclusive of each other. Whereas, if the relationship between the parties had been contractually arranged as a "partnership," the right to pursue competing interests would have been curbed by virtue of a duty of loyalty or a fiduciary duty, and any new prospects could be viewed as property of the partnership. Id. at § 535.
A partner's duty of loyalty to the partnership and the other partners includes ... the duty to refrain from competing with the partnership in the conduct of the partnership business before the dissolution *465 of the partnership. While a partner may engage in a separate business during the period that the partner is a member of a firm, the partner cannot do so if it is of the same nature and in competition with that of the firm.
Id.
The majority in this case, by raising Hallock ipso facto to partnership status, imposes additional duties than those bargained for in the joint venture contract. See Jerry Dickerson Presents, Inc. v. Concert Southern Chastain Promotions, 260 Ga.App. 316, 579 S.E.2d 761 (2003) (trial court correct in granting summary judgment where "Joint Venture Affidavit" between parties was not sufficient to create a partnership relationship).
Florida law certainly recognizes that there is a distinction between a joint venture and a partnership. Nautica Int'l., Inc. v. Intermarine USA, L.P., 5 F.Supp.2d. 1333 (S.D.Fla.1998). It is not that a party to a joint venture would not owe a fiduciary duty to the other party. Deal Farms, Inc. v. Farm & Ranch Supply, Inc., 382 So.2d 888, 890 (Fla. 1st DCA 1980) ("relationships of joint venture and partnership are similar and governed by the same rules of law, although distinguishable in certain respects"). Under Florida law, a party to a joint venture owes fiduciary duties to the other party. The critical difference is that with joint ventures, the scope of the business relationship is limited to a single purpose or object. 8 Fla.Jur.2d at § 746 ("Joint venture differs from partnership in that it has a limited and specific object in view, [and] ordinarily terminat[es] when the objects of its creation have been accomplished"). Hence, naturally, the scope of the fiduciary duty is limited to the subject matter of the agreement and does not go beyond the contract. Id. ("some of the incidents of partnership do not, or may not, apply [to joint ventures]" ).
In this case, before Hallock ever entered the picture, the subject resort property already contained numerous restaurants, all competing against each other. Holiday Isle is a resort that has a longstanding practice of hosting a variety of competing restaurants to accommodate a broad range of clientele wishing to have a selection in dining fare at differing times and ambiances as may be importuned by the composition of the resort's customer base. Thus, the fact that another competing restaurant was established after Hallock's introduction into Rip's is hardly a surprise, much less a breach of any fiduciary or confidential relationship. In fact, Hallock admits that he entered into the joint venture agreement knowing that Rip's would be expected to operate in conformity with and for the betterment of the entire property.[1] As a businessman, Hallock stepped into a situation fraught with the potential for conflict, and now he comes to this court looking for sympathy on a risk he contracted to assume. Cf. Williams v. Bear Stearns & Co., 725 So.2d 397 (Fla. 5th DCA 1998) (economic loss rule bars recovery for breach of fiduciary duty between contracting parties who assume risk of certain investments); Bruce v. Heiman, 392 So.2d 1026 (Fla. 5th DCA 1981) (racer who signed release of liability form in order to gain admission to restricted area is barred from recovery for knowingly assuming risk).
Because the parties expressly structured their relationships in writing as a joint venture, Holiday Isle never needed the *466 consent, approval or blessing of either Tosun or Hallock if it chose to sponsor another restaurant to the exclusion of either Tosun or Hallock, or the inclusion of one and not the other. Similarly, neither Tosun or Hallock needed the blessing of the other if one chose to pursue another restaurant venture, whether at the Holiday Isle's location or elsewhere. Thus, the only question before this court is whether the actions of Holiday Isle or Tosun breached the joint venture agreement with Hallock as to Rips alone. The joint venture agreement concerns Rip's alone. On this point of breach of fiduciary duty, the "misconduct" or "diversion of assets" allegations center around the cancellation of the breakfast service at Rip's, the reassignment of some employees and the relocating of a few tables, chairs and cooking utensils from Rip's to another restaurant at the resort. With regard to the above allegations, there is no factual dispute here needing the resolve of a jury. The parties agree that the above events happened. Thus, the only question is whether they are tantamount to a breach of fiduciary duty. I do not believe the conduct here is sufficient.
Here, the evidence bears out that the employees were employees of Holiday Isle, and it was the common practice of Holiday Isle to shift staff among the different restaurants due to turnover and other legitimate business reasons. Hallock himself acknowledged that the staff was legally employed by Holiday Isle, and that Holiday Isle could direct the employees among the several eateries as it deemed appropriate. It appears that the employee transfer about which Hallock complains, occurred in conjunction with the decision to cancel the breakfast shift at Rip's. Hallock has failed to show that the stop order on breakfast at Rip's was anything other than a standard executive decision to manage the different aspects of the resort as a whole.[2] He shows no malice on the part of the defendants designed to harm him. Similarly, Hallock also testified that Holiday Isle's redirecting a few pots and pans, a slicer and tables did not leave Rip's wounded or incapable of serving its guests and did not have any effect on the closing of Rip's. Relocating of these minor operational functions appears de minimus at best.
A breach of fiduciary duty does not effervesce from such facts, and Hallock has failed in his burden to both articulate and substantiate his claim. This is not the stuff from which a claim for breach of fiduciary duty can be created or go to a jury. As such, I respectfully dissent.
NOTES
[1] This admission is supported by the tight rein that Holiday Isle kept on the premises. The joint Venture Agreement between Holiday Isle and Tosun was renewable annually by Holiday Isle at its sole option. Holiday Isle could non-renew without cause or justification.
[2] Moreover, the evidence shows that from 1984 when Rip's opened, to 1996, just a few months before Hallock purchased an interest in Rip's via the joint venture agreement, Rip's did not serve breakfast. Because breakfast was skipped for twelve years, it hardly seems that the inclusion of breakfast service was an integral part of the joint venture agreement. The joint venture agreement certainly does not speak to breakfast being a requirement.