# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 03-4171, 03-4173, 03-4175, 03-4194

SIGMUND LEFKOVITZ, *et al.*,

*Plaintiffs-Appellees, Cross-Appellants*,

*v.*

NATHAN WAGNER, *et al.*,

*Defendants-Appellants*,

and

JARNIS UNITED PROPERTIES CO.,

*Proposed Intervenor-Appellant*,

and

GRIPPO & ELDEN, *et al.*,

*Cross-Appellees*,

and

29-31 ASSOCIATES,

*Appellant*.

_____

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 97 C 7555—**Elaine E. Bucklo**, *Judge*.

_____

ARGUED NOVEMBER 10, 2004—DECIDED JANUARY 18, 2005

_____

Before POSNER, WOOD, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*.  Before us is a multifaceted challenge to the confirmation of an arbitration award. We omit many details in the interest of simplicity. In 1990, six individuals who had been working together for many years in the real estate business created a partnership that they called "Jarnis." Each took an equal share in the partnership, although each one-sixth share was divided in turn among the active member of the partnership, members of his family, and trusts for the benefit of the family members. The partners (by which we mean, unless otherwise indicated, the active members) later had a falling out. Four of them ganged up against the other two, the Lefkovitzes, who in 1997, joined by their family trusts, brought this suit against their four oppressors plus four companies controlled by the latter. The suit charges that the defendants, in violation of RICO, the Jarnis partnership agreement, and fiduciary obligations arising from the partnership, diverted to themselves partnership income in which the plaintiffs as co-partners were entitled to share. The defendants had done this, the plaintiffs alleged, by paying themselves inflated compensation for services that they had rendered or purported to have rendered to the partnership.

Although Jarnis was not a party to the suit, the suit might seem to be really a derivative suit on the partnership's behalf, charging that the defendants looted it. "When a corporation is injured by a wrongful act but the board of directors refuses to seek legal relief, a shareholder can sue the wrongdoer on behalf of the corporation. Such a suit is known as a derivative suit, and is an asset of the corporation." *Kennedy v. Venrock Associates*, 348 F.3d 584, 589 (7th Cir. 2003). Although most derivative suits are brought on behalf of corporations, a derivative suit can be brought on behalf of a partnership or other unincorporated firm. Fed. R.

Civ. P. 23.1. No party has sought to have this case litigated as a derivative suit; but if individual partners sue to enforce rights belonging to a nonconsenting third party, namely the partnership, the court must dismiss the suit. See *Fieldturf, Inc. v. Southwest Recreational Industries, Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998). One cannot sue, other than in a representative capacity, to enforce a right that belongs to someone else. Cf. *People Organized for Welfare & Employment Rights (P.O.W.E.R.) v. Thompson*, 727 F.2d 167, 173 (7th Cir. 1984). Thus—to bring the point closer to home—shareholders cannot maintain a RICO suit for injury to their corporation. *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990); *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1335-37 (7th Cir. 1989); *In re Sunrise Securities Litigation*, 916 F.2d 874, 887-88 (3d Cir. 1990).

But it is the law of the jurisdiction under which a partnership is organized that determines who has a legally enforceable right to sue to prevent or correct an improper diversion of partnership income. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991); *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795, 803-04 (7th Cir. 2003). Jarnis is a Florida general partnership, and under Florida law the partners in a general partnership owe fiduciary obligations to each other. Fla. Stat. Ann. § 620.8404; see *id.*, § 620.8405; *Hallock v. Holiday Isle Resort & Marina, Inc.*, 885 So. 2d 459, 462-63 (Fla. App. 2004); *Lundstrom Realty Advisors, Inc. v. Schickedanz Bros.-Riviera Ltd.*, 856 So. 2d 1117, 1121-22 (Fla. App. 2003). (This is the general rule, not anything peculiar to Florida. See, e.g., *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.); *RTRA Group, Inc. v. Salomon Bros. Holding Co.*, 680 N.E.2d 769, 772 (Ill. App.

1997); *McSweeney v. Buti*, 637 N.E.2d 420, 424 (Ill. App. 1994).) So the plaintiffs were not required to file this as a derivative, or any kind of representative, suit. The plaintiffs could sue, and are suing, on their own behalf rather than on behalf of the partnership.

This point is fogged up by the fact that, as we shall see, Jarnis received an award from the arbitrator. This has no practical significance; the award was no different from awarding two-thirds of the amount of it to the defendants (and entities controlled by them to which they had trans-ferred fractions of their shares) and the other third to the plaintiffs. Similarly, although the corporation or other entity on whose behalf a suit is brought, being the owner of the claim sued upon, normally is an indispensable party, *Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 523 n. 2 (1947); *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990); *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1289 (11th Cir. 2001), this observation is inappli-cable to a suit such as the present one in which the partner (or shareholder) is allowed to sue in an individual rather than representative capacity. The next step, which however we declined to take in *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 161-62 (7th Cir. 1996), would be to allow a deriva-tive suit to be brought instead as an individual suit when-ever the corporation (the usual entity on behalf of which a derivative suit is brought) is closely held, at least where, as in this case (were Jarnis a corporation), all the shareholders are before the court, so that there are no merely represented shareholders.

But by virtue of the principles of partnership law, the plaintiffs in this case had and exercised an option to sue as individuals rather than on behalf of the partnership. The analogy is to a suit by a minority shareholder against the majority shareholder, claiming that the latter has violated

the fiduciary duty that such a shareholder, especially in a closely held corporation, owes to minority shareholders. *Kennedy v. Venrock Associates, supra*, 348 F.3d at 589; *Strougo v. Bassini*, 282 F.3d 162, 173 (2d Cir. 2002); see also *United States v. Byrum*, 408 U.S. 125, 137-38 (1972); *Lawton v. Nyman*, 327 F.3d 30, 40-41 (1st Cir. 2003); *Hollis v. Hill*, 232 F.3d 460, 468 (5th Cir. 2000); but see *Combs v. PricewaterhouseCoopers LLP*, 382 F.3d 1196, 1200 (10th Cir. 2004).

So we can proceed to the merits of the appeal. The defendants demanded arbitration pursuant to the arbitration clause in the Jarnis partnership agreement. The plaintiffs resisted on the ground that some of the entities that they had joined as defendants along with the four active members of Jarnis that they were suing had not signed arbitration agreements. But the four assured the court that they controlled those entities, together with Jarnis itself, because they controlled two-thirds of the voting power in the partnership. They owned less than two-thirds, but that was only because they had transferred some of their partnership interests to relatives and family trusts; and both the relatives and the trusts were under their thumb.

The court ordered arbitration. That was in 1998. The proceedings before the arbitrator—which swelled when the arbitration was consolidated with two other arbitrations between the parties—were protracted, but finally ended in 2003 with an award that among other things ordered the defendants to repay Jarnis more than $7 million and ordered Jarnis to reimburse the plaintiffs for $1.8 million in attorneys' fees. The district court confirmed the award in its entirety, and the flurry of appeals here consolidated for decision followed.

One of the appeals is by Jarnis itself, from the district court's refusal to allow it to intervene in the confirmation proceeding on the ground that it should have sought in-

tervention earlier. The civil rules authorize the grant of intervention only "upon timely application" for it. Fed. R. Civ. P. 24; *NAACP v. New York*, 413 U.S. 345, 365-66 (1973). The aim is "to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal;" and so "as soon as a prospective intervenor knows or has reason to know that his interests might be adversely affected by the outcome of the litigation he must move promptly to intervene." *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983); see also *Reid L. v. Illinois State Board of Education*, 289 F.3d 1009, 1017-18 (7th Cir. 2002); *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). Jarnis argues that since it was not a party to the proceedings before the arbitrator it had no reason to intervene until the arbitrator unexpectedly ordered it to pay the plaintiffs' attorneys' fees. And it is certainly unusual—so unusual as to be unforeseeable—for a nonparty to a litigation to be treated as Jarnis was, namely as a defendant (with respect to the attorneys' fees). It was not until the arbitrator made the award against Jarnis that it had a ground for intervention—unless it wanted more than the $7 million that it was awarded, but it did not.

This discussion may seem to be leading ineluctably to the conclusion that Jarnis was entitled to intervene in the district court; more fundamentally, and without need to invoke Rule 24, because someone against whom a judgment is entered is entitled to the rights of a party. *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61-62 (2d Cir. 2004); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) (L. Hand, J.); cf. *Devlin v. Scardelletti*, 536 U.S. 1, 7-8 (2002); *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 333 F.3d 763, 768 (7th Cir. 2003); *Cordoza v. Pacific States Steel Corp.*, 320 F.3d 989, 995-96 (9th Cir. 2003). And ordinarily the award of relief against a nonparty would be just the kind of *ultra vires* act

by an arbitrator that would justify judicial intervention. 9 U.S.C. § 10(a)(4); *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554-55 (7th Cir. 2002); *Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1003 (7th Cir. 2000); *Katz v. Feinberg*, 290 F.3d 95, 97-98 (2d Cir. 2002); *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 9 (1st Cir. 2000). But not here. The only plausible motivation for Jarnis's arguing against its being included in the award is that the defendants, who control Jarnis, are trying to derail the arbitration because they are dissatisfied with its outcome. Cf. *Dighello v. Busconi*, 673 F. Supp. 85, 88-89 (D. Conn. 1987). As we noted earlier, a judgment that Jarnis pay the plaintiffs $1.8 million has exactly the same consequence as a judgment that the defendants pay them $1.2 million (two-thirds of $ 1.8 million), because the defendants and their dependents own two-thirds of Jarnis.

Jarnis (which is to say the defendants, the puppeteers) argues that the defendants cannot adequately represent its interests because, not owning 100 percent of it, they have an incentive to shift costs from their shoulders to Jarnis. Indeed so. But then it is the minority owners, namely the plaintiffs, who should be arguing against the award's having been directed against Jarnis rather than the defendants, who have managed to offload one-third of the award onto the plaintiffs—who are not complaining. The issue of the attorneys' fee award is therefore moot.

The defendants argue that the arbitrator engaged in *ex parte* communications and also exhibited bias in favor of the plaintiffs, and either type of behavior could be a basis for refusing to confirm an arbitrator's award. 9 U.S.C. § 10(a)(2)-(3); *Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, 307 F.3d 617, 619-20 (7th Cir. 2002); *Dow Corning Corp. v. Safety Nat'l Casualty Corp.*, 335 F.3d 742, 749-52 (8th Cir. 2003). But not in the circumstances of this case.

One of the issues in the arbitration was whether the defendants had caused Jarnis to overpay them for their services—the motive being, as should be evident from our previous discussion, that one-third of the overpayment would be borne by the plaintiffs. The arbitrator hired an accounting firm to provide neutral expert evidence to assist him in analyzing that issue. The defendants complain that the arbitrator met with the firm in their absence. He did, though it is unclear whether he discussed the overpayment issue in those meetings. If he did discuss it, still there is no indication that the discussion had any effect on his rulings.

The issue of bias arises from a hearing at which the arbitrator complained that his fee was in arrears. The plaintiffs' lawyer clucked his tongue sympathetically and said that the arbitrator "shouldn't have to deal" with the issue of fees. The defendants' lawyer was silent—because he was planning to challenge the arbitrator's fee, and did so a few days later. Under the rules of the American Arbitration Association, which governed this arbitration, fees and fee protests are lodged with the Association, which after resolving any protest remits the fees to the arbitrator. He is not supposed to learn of the protests. If he wants to complain about a party's failure to pay his fee, he is supposed to complain to the Association rather than raise the matter with the parties. The defendants argue that by saying what he did the plaintiffs' lawyer violated the rule and signaled the arbitrator that the defendants were responsible for the delay in the payment of his fee. Cf. *Sullivan v. Conway*, 157 F.3d 1092, 1095-96 (7th Cir. 1998).

The argument is highly conjectural, but there is a little more. The defendants refused to pay their full share of the arbitrator's fee, and the arbitrator learned of this at some point—we know because his final award required the defendants to reimburse the plaintiffs for the amount they

had paid in excess of their share of the fee. The defendants speculate that when the arbitrator learned that they had challenged his fee, he became furious and resolved to retaliate against the defendants in his award. This is another stretch. It is not as if the arbitrator were denied his fee. He got every penny that he thought himself entitled to, and merely learned that the defendants had wanted him to get less. It is difficult to see how this is different from any other case in which a litigant challenges a judge's ruling. It would be different if the challenger succeeded in taking money out of the judge's, or in this case the arbitrator's, pocket. But the challenge failed, thus costing the arbitrator nothing. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *Brokaw v. Mercer County*, 235 F.3d 1000, 1025-26 (7th Cir. 2000); *Hepperle v. Johnston*, 590 F.2d 609, 613-14 (5th Cir. 1979). Anyway the defendants can't be heard to complain about their own strategy. If the arbitrator's knowledge that his fee is being challenged precludes enforcement of his award, then anyone who sees that the case is going badly can scuttle the arbitration just by disputing the arbitrator's fee.

Both allegations of impropriety bespeak a lack of understanding of how arbitration differs from adjudication. Arbitrators are not professional judges; often they are not lawyers at all, though this one was. Parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose. *Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, *supra*, 307 F.3d at 620; *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679-80 (7th Cir. 1983); *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493, 500 (4th Cir. 1999); *Commonwealth Coatings Corp. v. Continental Casualty*

*Co.*, 393 U.S. 145, 150-51 (1968) (concurring opinion). Stricter rules cabin the generalist because he is more apt to be led astray by the lawyers and witnesses in a matter in which his only knowledge comes from them. When disputants repose their trust in a specific individual rather than having to take the luck of the draw, it is right that they should have to take the bad with the good unless the individual runs completely off the rails. The improprieties here, if improprieties they were, were harmless in the setting of a voluntary arbitration.

The only other issue presented by the defendants that we need to discuss is the arbitrator's consolidating separate arbitration proceedings without the defendants' express consent. Selection of the decision maker by or with the consent of the parties is the cornerstone of the arbitral process. The fact that a party has consented to arbitrate one dispute before Arbitrator Smith and an unrelated dispute, albeit with the same antagonist, before Arbitrator Jones doesn't mean that he's agreeable to having Jones arbitrate the first dispute or Smith the second. Hence the rule that consolidation of arbitrations is permissible only if the arbitration clauses authorize it. *Connecticut General Life Ins. Co. v. Sun Life Assurance Co.*, 210 F.3d 771, 773-74 (7th Cir. 2000); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 274-75 (7th Cir. 1995); *Hartford Accident & Indemnity Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219, 229-30 (2d Cir. 2001).

But that is in general, and this case is special. The suit was filed in 1997 and the following year the defendants began an arbitration proceeding against the plaintiffs to resolve a dispute over one of the Jarnis investments. It was in that proceeding that the arbitrator to whom we have been referring throughout this opinion (a Chicago lawyer named Robert Grossman) was selected, with the agreement of the defendants. When in the present suit the district judge—at the defendants' request—ordered arbitration, the plaintiffs

filed the claim on which their suit was based as a counter-claim in the first arbitration proceeding, the one the defendants had initiated, and the arbitrator accepted the filing. The defendants contend that this was improper because there were different parties in the two arbitration proceedings and the issues were different as well.

The difference in parties has no significance, since the additional parties to the counterclaim were under common control with the parties to the original claim. The defendants point out that some of these parties are trusts and that trustees have a fiduciary duty to their beneficiaries. But trustees can consent to join forces with others in a litigation and delegate control to one or more of those others, who may have a larger stake or better counsel. In effect the trustee as principal hires an agent, and there is no doubt that like other principals a trustee can delegate authority to agents. *Illinois Conference of Teamsters & Employers Welfare Fund v. Mrowicki*, 44 F.3d 451, 463 (7th Cir. 1994). If a trustee is careless or disloyal in delegating, the beneficiaries may have a grievance against him, but parties that represent to the court that they have been authorized to control the entire litigation, as the defendants did here, cannot later repudiate their representation in an effort to obtain a favorable judgment; that would be a fraud on the court. Cf. *Jankowski Lee & Associates v. Cisneros*, 91 F.3d 891, 896 n. 2 (7th Cir. 1996); *Davenport Recycling Associates v. Commissioner*, 220 F.3d 1255, 1261-62 (11th Cir. 2000).

The issues in the two arbitrations, as far as we can judge, weren't different, but if they were, we can't see why that should matter when the defendants consented to have Grossman preside in both arbitrations. Since the parties in interest were the same, and the arbitrator the same, it made perfect sense to consolidate the proceedings. The defendants'

objection is understandable only as a tactical effort to derail an arbitration that they lost.

The third arbitration, instituted in 1998 by an entity controlled by the defendants (29-31 Associates), sought overdue rent from a partnership controlled by the plaintiffs. The issues presented by this claim did not overlap those presented by the other claims. Nor were the parties the same. But they were all under the control of the parties to the other arbitrations and to this lawsuit, and once again the defendants consented to have Grossman arbitrate. Nevertheless, there was neither complete diversity nor a federal question; and an arbitration award cannot be enforced in federal court unless the dispute giving rise to the award would have been within the court's jurisdiction to resolve had the dispute given rise to a lawsuit rather than to an arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32 (1983).

But there is a wrinkle. The arbitrator awarded several million dollars to the claimant in this third arbitration— which meant, in effect, to the defendants, who control the claimant—and having done so he then imposed a lien on that award to secure payment to the plaintiffs of the amount that he had awarded them in the other consolidated proceedings. So if, as argued in William A. Fletcher, " 'Common Nucleus of Operative Fact' and Defensive Set-Off: Beyond the *Gibbs* Test," 74 *Ind. L.J.* 171, 172-78 (1998); see also *United States for Use and Benefit of D'Agostino Excavators, Inc. v. Heyward-Robinson Co.*, 430 F.2d 1077, 1081 n. 1 (2d Cir. 1970); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1422 (2004 supp.); 3 James Wm. Moore, *Moore's Federal Practice-Civil* § 13.31 (3d ed., 2004 supp.), a setoff, unlike the usual permissive counterclaim, doesn't require an independent basis for federal jurisdiction, jurisdiction over the third arbitration is secure.

Our view is that jurisdiction in such a case is possible but not automatic, because the jurisdictional issue is governed by 28 U.S.C. § 1367. That statute defines the supplemental jurisdiction of the federal courts, which is to say their jurisdiction over matters related to matters over which federal jurisdiction is explicitly conferred. *Channell v. Citicorp Nat'l Services, Inc.*, 89 F.3d 379, 384-86 (7th Cir. 1996); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212-14 (2d Cir. 2004). The statute makes the exercise of supplemental jurisdiction discretionary with the district court. So if this arbitration were instead a proceeding before the district court, it would be up to the judge, subject only to light appellate review, to determine whether to allow the setoff to be litigated before him. It seems to us—we cannot find a case on the point—that where the matter is before an arbitrator, the discretion should be his to exercise, with due regard for the principle that the scope of the arbitrator's authority is defined by the arbitration clause itself. The discretion was exercised here in favor of allowing the setoff to be included in the consolidated arbitrations.

The defendants raise other objections to the arbitration award. But though phrased as challenges to the arbitrator's authority, they are really objections to the merits of the arbitrator's rulings and thus fall outside the limited scope of judicial review of arbitration.

The plaintiffs, joined by their lawyers, have cross-appealed from the district judge's denial of sanctions. We have nothing to add to her discussion of the issue. The defendants' arguments, while highly technical and, in part for that reason, unpersuasive, are not frivolous.

29-31 Associates, the claimant in the third arbitration, has appealed from the ruling that the arbitrator had jurisdiction over it. It was not a party in the district court and has not moved for intervention, so it is not a party in this court either. Its appeal is dismissed.

The district court's judgment confirming the award and denying sanctions is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*