In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 15-1846

MICHAEL MAGRUDER,

*Plaintiff-Appellant,*

*v.*

FIDELITY BROKERAGE SERVICES LLC,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 1188 — **John Robert Blakey**, *Judge.*

---

SUBMITTED OCTOBER 29, 2015 — DECIDED MARCH 17, 2016

---

Before WOOD, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Michael Magruder bought 940,000 shares of Bancorp International Group (Bancorp) through his account at Fidelity Brokerage Services. He paid $9,298 and some years later asked Fidelity to deliver a certificate showing his ownership of the shares. When Fidelity did not comply, Magruder initiated arbitration through the Financial Industry Regulatory Authority (FINRA). Magrud-

er and Fidelity chose simplified arbitration (see FINRA Rules 12401, 12800). In a simplified arbitration, the arbitrator cannot award more than $50,000 in damages or order specific performance that would cost the losing party more than $50,000. Magruder had demanded a total of $28,000 in damages (actual plus punitive), so the dispute was amenable to the simplified procedure.

In March 2014 the arbitrator directed Fidelity to hand over a stock certificate or explain why it could not do so. Fidelity explained that in 2005 the Depository Trust & Clearing Corporation (DTCC), which is responsible for issuing paper certificates for Bancorp's stock, had placed a "global lock" on that activity as a result of fraud reported by Bancorp, whose president asserted that fraudulent shares bearing identification number 106 had been flooding the market. In 2012 Bancorp offered to swap series 106 shares for new series 205 shares, but by then Bancorp had been delisted from stock exchanges and FINRA blocked the swaps. This left Fidelity unable to supply a certificate, for the series 106 shares remained subject to DTCC's global lock. In October 2014 the arbitrator accepted this explanation and issued an award denying Magruder's claim.

Magruder then filed this suit, asking the district court to enforce the arbitrator's March 2014 award. Fidelity asked the court to enforce the October 2014 award. The district judge sided with Fidelity, and Magruder appealed. Neither side's briefs in this court explain how the dispute comes within federal jurisdiction, so we directed the parties to file supplemental memoranda addressing that subject.

Fidelity contends that the district court had subject-matter jurisdiction under 28 U.S.C. §1332, which covers di-

versity of citizenship. We will assume that the parties are of diverse citizenship—though Fidelity has not told us the citizenship of its members and instead treats itself as a corporation, which it isn't. See *Americold Realty Trust v. ConAgra Foods, Inc.*, No. 14–1382 (U.S. Mar. 7, 2016); *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998). Citizenship does not matter, because the stakes cannot exceed $50,000, and the minimum under §1332(a) is $75,000. They can't exceed $50,000 not simply because Magruder asked for less than $30,000 but also because the parties agreed to use FINRA's simplified procedure, which sets a $50,000 cap.

Fidelity ignores these facts and instead tries to estimate the value of 940,000 shares of Bancorp's stock. Yet Magruder already owns the stock, which cost him less than $10,000. This dispute is about a certificate, not ownership. What's more, Fidelity does not try to explain how the fraud, DTCC's refusal to issue certificates, and the end of market trading can have increased the value of Bancorp's shares by a factor of eight or more. It does not identify any actual transactions that give series 106 shares such a value high enough to reach $75,000 for 940,000 shares. So no matter how the stakes of an arbitrated dispute should be calculated for the purpose of §1332, a subject on which the circuits do not agree, *this* dispute is worth less than the jurisdictional minimum.

Magruder relies on federal-question jurisdiction under 28 U.S.C. §1331. The Federal Arbitration Act, 9 U.S.C. §§ 1–16, does not grant federal jurisdiction. See *Vaden v. Discover Bank*, 556 U.S. 49 (2009); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n.32 (1983). But he contends that the claim presented to the arbitrator arose under 17 C.F.R. §240.15c3–3(*l*)(1), which he reads as establish-

ing every stock owner's right to a certificate. Because his claim arose under federal law, Magruder maintains, a federal court has subject-matter jurisdiction to confirm or set aside the award.

It is not clear to us that §240.15c3–3(*l*)(1) establishes a federal right. It says that "[n]othing stated in this section shall be construed as affecting the absolute right of a customer of a broker or dealer to receive in the course of normal business … the physical delivery of certificates for … [f]ully-paid securities to which he is entitled". This declares that the section does not affect the customer's right to receive certificates to which "he is entitled." And when *is* a customer so entitled? That seems to be left to contracts between customer and broker, or to state corporate law.

Let us suppose, however, that §240.15c3–3(*l*)(1) creates a federal right, as opposed to disclaiming federal interference with rights resting on state law. *Vaden* holds that, when a claim proposed to be arbitrated arises under federal law, a federal court has subject-matter jurisdiction to rule on a petition to compel or forbid arbitration. Magruder supposes that this implies that, once the arbitration is over, a federal court also has subject-matter jurisdiction to confirm the award or set it aside. But that's not what *Vaden* holds, nor is it a logical extension of *Vaden*'s holding.

*Vaden* dealt with a petition under 9 U.S.C. §4 to compel arbitration. Section 4 provides that a district court may do this if, "save for such [arbitration] agreement, [it] would have jurisdiction under title 28, in a civil action … arising out of the controversy between the parties". In other words, if the claim sought to be arbitrated arises under federal law (or §1332 applies), then per §4 the district court has subject-

matter jurisdiction of a suit seeking an order to arbitrate. That's what *Vaden* concluded.

Section 4 does not deal with requests to enforce or set aside an arbitrator's decision. Section 9 deals with confirmation and §10 with vacatur. Neither §9 nor §10 has any language comparable to that on which the Supreme Court relied in *Vaden*. Long before *Vaden* we had reached the same conclusion about the effect of §4, and we also had held that a federal issue resolved by the arbitrator does *not* supply subject-matter jurisdiction for review or enforcement of the award. See *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003); *Minor v. Prudential Securities, Inc.*, 94 F.3d 1103 (7th Cir. 1996). Other circuits agree with us. See, e.g., *Carter v. Health Net of California, Inc.*, 374 F.3d 830, 836 (9th Cir. 2004); *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26–27 (2d Cir. 2000); *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1247 (D.C. Cir. 1999); *Collins v. Blue Cross Blue Shield of Michigan*, 103 F.3d 35 (6th Cir. 1996).

This conclusion harmonizes the law of arbitration with the law of contracts—appropriate because arbitration usually is a matter of contract, and the arbitrator usually serves as the parties' mutual agent to resolve a dispute that the parties could have resolved themselves. Put FINRA and its rules aside for a moment and consider what would have happened if Magruder had sued Fidelity under the federal securities laws, contending that Fidelity had violated §240.15c3–3(*l*)(1). Most litigation ends in settlement—which is to say, in a contract. If Magruder and Fidelity had reached a contractual solution but later disagreed about performance, could they return to federal court under the securities laws? The answer is no. *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S.

375 (1994), holds that, if parties settle litigation that arose under federal law, any contest about that settlement needs an independent jurisdictional basis—and as most contracts are governed by state law, this knocks out §1331 (unless perchance the district court entered the settlement as a judgment or reserved jurisdiction to enforce it). Our conclusion in *Doerge* and *Minor* that a federal question can suffice to order arbitration under §4, but not to enforce or set aside the decision under §9 or §10, parallels the distinction *Kokkonen* draws between an original federal claim and a dispute about its contractual resolution.

One passage in *Lefkovitz v. Wagner*, 395 F.3d 773 (7th Cir. 2005), could be read as inconsistent with *Doerge* and *Minor*. We remarked of one particular arbitration: "[T]here was neither complete diversity nor a federal question; and an arbitration award cannot be enforced in federal court unless the dispute giving rise to the award would have been within the court's jurisdiction to resolve had the dispute given rise to a lawsuit rather than to an arbitration." 395 F.3d at 781. This implies a belief that, if the arbitrator resolves a federal issue, then §1331 supplies jurisdiction over an action under §9 or §10. But *Lefkovitz* did not *hold* this; it stated that neither complete diversity nor a federal question existed. *Lefkovitz* did not discuss *Doerge* or *Minor* and had no reason to do so. Even when a federal court finds jurisdiction, as this passage in *Lefkovitz* did not, an unreasoned assertion of jurisdiction lacks precedential value. See, e.g., *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90–92 (1998) (drive-by jurisdictional rulings may be ignored). The question addressed in *Doerge*, *Minor*, and our decision today simply was not on the table in *Lefkovitz*, which does not modify circuit law.

Neither §1331 nor §1332 authorizes resolution of the parties' dispute about the arbitrator's decision. The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for lack of subject-matter jurisdiction.