## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20042

United States Court of Appeals
Fifth Circuit

**FILED**
January 14, 2020

Lyle W. Cayce
Clerk

NICOLE J. QUEZADA,

Respondent - Appellee

v.

BECHTEL OG & C CONSTRUCTION SERVICES, INCORPORATED,

Movant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, DENNIS, and HO, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

After conclusion of an arbitration proceeding between Bechtel OG&C Construction Services and its former employee Nicole Quezada on her claims of disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act, Bechtel sought to vacate the arbitrator's award under the Federal Arbitration Act.  Concluding it had jurisdiction over this request and Quezada's responsive motion to confirm the award, the district court determined that no basis existed under the Federal Arbitration Act on which to vacate the award and it therefore confirmed it.  Because the district court correctly concluded it had jurisdiction to entertain the motions

No. 19-20042

submitted by both parties and was correct to confirm the arbitration award here, we AFFIRM.

## I

Nicole Quezada worked for Bechtel OG&C Construction Services (Bechtel) on a construction project from August 2015 to February 2017. As a condition of her employment, Quezada was required to agree to participate in Bechtel's Employee Dispute Resolution Program (DRP). The DRP requires arbitration before the American Arbitration Association (AAA) for "resolving workplace disputes for both employees and the company." The DRP contained detailed provisions governing the procedures to be used by the arbitrator. The DRP also required application of the substantive law that would govern in the federal district court located where the arbitration occurs.

In June 2017, Quezada and Bechtel jointly submitted an employment dispute to the AAA, in which Quezada claimed Bechtel engaged in discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act (ADA).[1] The AAA arbitrator appointed to preside over the proceedings conducted a three-day evidentiary hearing in March 2018 in Houston, Texas. The parties submitted post-hearing briefs. The arbitrator issued an interim award finding that Quezada had shown discrimination based on Bechtel's refusal to allow her to work overtime, but that she could not show discriminatory or retaliatory termination "because she accepted a voluntary layoff and it was not a constructive discharge." The arbitrator found Quezada entitled to $500 in nominal damages for the denial of overtime opportunities.

---

[1] Quezada's arbitration claim under the ADA was that she suffered from peripheral edema and venous insufficiency, which caused pain, swelling, and numbness in her extremities and impacted her sleep. Until December 2016, according to the arbitrator, she was able to perform her job without accommodation, but she later needed frequent restroom breaks and light duty.

No. 19-20042

Quezada moved for reconsideration of the interim award. The arbitrator granted reconsideration, setting aside the interim order and finding that it had overlooked key evidence in its earlier award. The arbitrator then issued a final award that found Quezada had shown discrimination and failure to accommodate based on denial of overtime, but that the termination did not violate the ADA. Despite finding the termination was not actionable, the arbitrator awarded (1) $41,944 in back pay (pre-hearing earnings since termination), (2) $50,440 in front pay (projected future earnings), (3) $6,000 for compensatory damages for "depression, anxiety, trouble sleeping and . . . PTSD due to Bechtel's treatment of her," (4) $500 in "[n]ominal damages arising from the denial of the opportunity to work overtime," (5) $197,797.06 in prevailing party attorneys' fees and costs, (6) $98,934.25 in pre- and post-judgment interest.[2]

Bechtel then sought vacatur or, alternatively, modification, of the arbitration award in the Southern District of Texas, arguing that the arbitrator exceeded his authority under the parties' submissions, because its fact finding that Quezada's termination was not unlawful precluded its award of back- and front-pay, compensatory damages, and attorneys' fees under governing law. Quezada later moved to confirm the award. The district court concluded (1) it had subject matter jurisdiction over the action under 28 U.S.C. § 1331 as the action arose under federal law (i.e., a federal question); and (2) Bechtel was not entitled to vacatur under the narrow grounds for such relief provided by the Federal Arbitration Act (FAA). Accordingly, the district court denied Bechtel's motion to vacate and granted Quezada's motion to confirm. Bechtel timely appealed.

---

[2] The arbitrator's final award also provided that "[t]he administrative fees, expenses, and costs of the [AAA] totaling $2,750.00 and the compensation of the arbitrator totaling $29,095.00 shall be borne by Bechtel."

No. 19-20042

## II

We first examine the basis for the district court's, and our, jurisdiction, which we must consider despite the parties' agreement that we have jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (noting that "federal courts . . . must consider jurisdiction *sua sponte* if not raised by the parties"); *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000) ("If the district court lacked jurisdiction, our jurisdiction extends not to the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." (cleaned up)).

The FAA expresses Congress's intent that private arbitration agreements be enforced according to their terms. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Stolt-Nielsen*, 559 U.S. at 682. Additionally, a party to an arbitration agreement can seek an order from a federal district court compelling arbitration, 9 U.S.C. § 4; *see Stolt-Nielsen*, 559 U.S. at 682, and any party to an arbitration may seek to confirm the final arbitration award, which "the court must grant . . . unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9; *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

"As for jurisdiction over controversies touching arbitration, the [FAA] does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008). Such independent bases include diversity of citizenship under 28 U.S.C. § 1332 or federal question jurisdiction under 28

No. 19-20042

U.S.C. § 1331. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983).

In *Vaden v. Discover Bank*, 556 U.S. 49 (2009), the Supreme Court addressed the proper standard for determining federal jurisdiction when faced with a petition to compel arbitration under section 4 of the FAA. 556 U.S. at 62. The Court rejected the standard articulation of the well-pleaded complaint rule ordinarily used to analyze federal jurisdiction, under which courts would look to the face of the federal court petition for a basis for federal jurisdiction. *Id.* Instead, the Court adopted the so-called "look through" approach. *Id.* Under this approach, "[a] federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law." *Id.* Thus, whereas the well-pleaded complaint rule would require the section 4 motion to compel itself evinces a federal cause of action, under *Vaden*, courts should examine the underlying dispute potentially subject to arbitration to determine whether that dispute presents a federal question. *Id.*; *see Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 936 (5th Cir. 2012) (explaining *Vaden*).

In reaching this result, the Supreme Court relied in part on the language of section 4, which states that a proponent of arbitration may seek an order compelling arbitration in "any United States district court which, *save for [the arbitration] agreement*, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4 (emphasis added); *see Vaden*, 556 U.S. at 62. As the Supreme Court held, "[t]he phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it." *Vaden*, 556 U.S. at 62. The Court also held that the look-through approach was consistent with basic jurisdictional tenets and

5

practical considerations, because failure to look through to the arbitration proceeding's subject matter "would permit a federal court to entertain a § 4 petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract." *Id.* at 65. Such an "approach would not accommodate a § 4 petitioner who could file a federal-question suit in (or remove such a suit to) federal court, but who has not done so." *Id.*

After *Vaden*, a circuit split developed regarding whether the same look-through approach also applies to applications to confirm an arbitration award under section 9, to vacate under section 10, or to modify under section 11. *See* 27 A.L.R. FED. 3D ART. 4 (2018). On one side of the split are circuits that decline to apply the look-through approach set out in *Vaden* to applications to motions brought under sections 9, 10, or 11, for confirmation, vacatur, or modification, respectively; the Third and Seventh Circuits take this approach. *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 252 (3d Cir. 2016); *Magruder v. Fid. Brokerage Services LLC*, 818 F.3d 285, 288 (7th Cir. 2016). On the other side are courts that extend the look-through approach to motions brought under these other sections, finding federal subject matter jurisdiction exists where the underlying arbitration proceeding would have been subject to federal jurisdiction but for the arbitration clause; the First, Second, and Fourth Circuits take this view. *See Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc.*, 852 F.3d 36, 47 (1st Cir. 2017); *Doscher v. Sea Port Group Sec., LLC*, 832 F.3d 372, 381 (2d Cir. 2016); *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 679 (4th Cir. 2018). This Circuit has yet to weigh in. The district court recognized the split, and determined that "[w]hile an especially close question, this [c]ourt is persuaded by the majority view" that "[f]ederal question jurisdiction over a

petition filed under Section 9, 10, or 11 exists if, looking through the petition, the underlying controversy between the parties arises under federal law."

The minority view held by the Third and Seventh Circuits maintains that the absence of the "save for [the arbitration] agreement" language found in section 4 compels a different jurisdictional analysis for the various motions that can be brought after an arbitration award has been issued under the FAA. *See Goldman*, 834 F.3d at 253 ("Section 10 lacks the critical 'save for such agreement' language that was central to the Supreme Court's *Vaden* opinion."); *Magruder*, 818 F.3d at 288 ("Neither § 9 nor § 10 has any language comparable to that on which the Supreme Court relied in *Vaden*."). The majority view, however, reasons that although this "save for" language is in fact absent in these other sections, the Supreme Court's guidance in *Vaden* and the background principles animating its jurisdictional analysis under the FAA require the use of the same look-through approach for post-award motions as those brought pre-award under section 4. *See Ortiz-Espinosa*, 852 F.3d at 45–47; *Doscher*, 832 F.3d at 381–86; *McCormick*, 909 F.3d 682–84. Indeed, courts have consistently noted that "[t]he [FAA] was enacted as a single, comprehensive statutory scheme." *Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.*, 577 F.2d 264, 268–69 (5th Cir. 1978) (citing *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 201 (1956); *Robert Lawrence Company v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959); *Bangor and Aroostock R. Co. v. Main Central R. Co.*, 359 F.Supp. 261 (D.D.C.1973)); *see also* WRIGHT & MILLER, 13D FED. PRAC. & PROC. JURIS. § 3569 (3d ed.) (noting that the lack of jurisdictional grant arising out of the FAA has been interpreted uniformly among the various sections of the statute, despite varying degrees of clarity that certain sections do not provide a jurisdictional grant). As the majority view holds, this principle of uniformity dictates using the same approach for determining jurisdiction under each section of the statute. *See, e.g.*,

*McCormick*, 909 F.3d at 684 ("[O]ur holding has the added virtue of applying a uniform jurisdictional approach to the FAA as an integrated whole.").

The rule that the FAA is not an independent basis for federal jurisdiction and does not enlarge existing grounds for jurisdiction also dictates a uniform jurisdictional approach. *See Hall St.*, 552 U.S. at 581–82. As the Second Circuit pointed out, "if § 4 of the FAA does not enlarge federal-court jurisdiction, . . .how can a federal court's jurisdiction under the same jurisdictional statute differ between § 4 and all other remedies under the Act?" *Doscher*, 832 F.3d at 383. To provide a different jurisdictional rule for section 4 would be, in essence, to expand jurisdiction for section 4 motions, contravening the FAA's non-expansion rule. *See id.* at 384. "The only way to avoid this contradictory result," as the Second Circuit put it, is "to conclude that the 'ordinary' jurisdictional inquiry under § 1331 looks to the underlying substantive dispute with respect to all remedies under the [FAA], not just § 4." *Id.*; *see also McCormick*, 909 F.3d at 682 ("Indeed, subscribing to such a reading would suggest that § 4 expands federal jurisdiction, a proposition that has been rejected by the Supreme Court.").

Finally, the practical considerations that animated the Supreme Court's use of the look-through approach in *Vaden* apply with equal force to all other sections authorizing a specific form of a motion under the FAA. The Court noted in *Vaden* that failing to use the look-through approach would have the "curious practical consequences" of "permit[ting] a federal court to entertain a § 4 petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract," which fails to "accommodate a § 4 petitioner who could file a federal-question suit in (or remove such a suit to) federal court, but who has not done so." *Vaden*, 556 U.S. at 65. The virtues of the look-through approach, on the other hand, include

permitting such a petitioner "to ask a federal court to compel arbitration without first taking the formal step of initiating or removing a federal-question suit—that is, without seeking federal adjudication of the very questions it wants to arbitrate rather than litigate." *Id.*

Applying this same reasoning to the post-award motions at issue here, parties would be required to go through a similarly inefficient and formalistic process as that noted in *Vaden*. That is, a litigant would be able to preserve federal jurisdiction over a motion to vacate, modify, or confirm an arbitration award by first filing a motion to compel arbitration under section 4, which benefits from the look-through approach. *See McCormick*, 909 F.3d at 684. As the Second Circuit put it, "there is a certain absurdity to an interpretation that permits parties to file motions to compel arbitration in any case where the underlying dispute raises a federal question but precludes them from seeking the same federal court's aid under the [FAA's] other remedial provisions related to the same dispute." *Doscher*, 832 F.3d at 387. According to that court, such a "bizarre jurisdictional triangle" would "produce the exact opposite of the [FAA's] goals," creating a perverse incentive for cautious practitioners to first file in federal court and be referred or compelled to arbitration, all for the sole purpose of preserving federal jurisdiction to later review the award. *See id.*

We find the majority view persuasive and now join the First, Second, and Fourth Circuits in concluding that motions brought under sections 9, 10, and 11, each of which provides the ability to seek a different remedy in district court following an arbitration award, are subject to the look-through approach endorsed in *Vaden*.

Here, the underlying dispute between Quezada and Bechtel arises out of the ADA, a federal statute. Because the arbitration claims would thus be subject to federal-question jurisdiction absent the arbitration agreement, the district court had authority to resolve the parties' motions under sections 9, 10,

and 11 of the FAA. *See McCormick*, 909 F.3d at 684 (holding jurisdiction existed where "underlying claim arises out of alleged violations of the Stored Communications Act, a federal statute"). We thus affirm the district court's finding of jurisdiction, and move to the merits of Bechtel's appeal.

## III

Bechtel argues on appeal that (1) the back and front pay awards the arbitrator awarded to Quezada violate Fifth Circuit law and the arbitrator exceeded its authority by ignoring that law; and (2) the arbitrator exceeded its authority in reconsidering its earlier denial of back and front pay. These arguments lack merit.

We review confirmation or vacatur of an arbitration award de novo. *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015). However, "review of the arbitration award itself 'is very deferential.'" *Id.* (quoting *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013)). Even if we disagree with the arbitrator's conclusions, the award should be confirmed "as long as the arbitrator's decision draws its essence from the contract." *Timegate Studios*, 713 F.3d at 802 (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)).

Title 9 U.S.C. § 10(a)(4) provides that an arbitration award may be vacated "where the arbitrator[] exceeded [its] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The grounds established for vacatur under § 10(a) are exclusive and may not be expanded by contract. *Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (citing *Hall St.*, 552 U.S. at 586). An arbitrator's legal or factual error ordinarily does not warrant vacatur. *See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing

decisions of lower courts."); *Hamel-Schwulst v. Country Place Mortg. Ltd.*, 406 F. App'x 906, 914 (5th Cir. 2010) ("It has been the rule for some time that courts do not vacate an arbitration award based on the merits of a party's claim."). Moreover, "[w]here the arbitrator is 'even arguably construing or applying the contract or acting within the scope of his authority the fact that a court is convinced he committed serious error does not suffice to overturn that decision.'" *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 62 (2000)). Where "there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator." *Id.*

Bechtel's first argument, that the arbitrator exceeded his authority by misapplying Fifth Circuit law, misunderstands the limited review of arbitration awards under the FAA. Although federal courts may vacate an award "[w]here an arbitrator exceeds his contractual authority," *Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989), this ground for vacatur is not implicated here. Instead, the arbitrator was well within the scope of his authority, because the parties agreed that "the [DRP] will be the exclusive means of resolving workplace disputes for both employees and the company, including disputes concerning legally protected rights, such as freedom from discrimination, retaliation, or harassment." Given that the underlying dispute here is plainly a workplace dispute, Bechtel's contention that the arbitrator failed to follow the law of this Circuit amounts to nothing more than a freestanding claim of manifest disregard for the law, a ground for vacatur this court has squarely rejected. *See Citigroup*, 562 F.3d at 358 ("[M]anifest disregard of the law as an independent, nonstatutory ground for setting aside an [arbitration] award must be abandoned and rejected."); *see* WRIGHT & MILLER, 13D FED. PRAC. &

No. 19-20042

PROC. JURIS. § 3569 (3d ed.) ("Five courts of appeals—the First, Fifth, Seventh, Eighth, and Eleventh Circuits—conclude that manifest disregard has not survived the *Hall Street* decision as a basis for vacating an arbitration award."). The district court was thus correct in denying vacatur on this ground.

Bechtel's second argument fares no better. Bechtel contends that the arbitration rules agreed to by the parties required the arbitrator to follow the Federal Rules of Civil Procedure, which, according to Bechtel, did not authorize the arbitrator to reconsider its interim award that only granted $500 in nominal damages. But Bechtel's argument ignores the fact that the DRP also contains a provision stating that "[e]ither party . . . may file a motion for reconsideration with the Arbitrator." Bechtel points to another provision of the DRP relating to motions to dismiss and motions for summary judgment in arguing that the district court erred in denying its motion to vacate on this ground. But that provision says nothing about motions to reconsider, which are specifically provided for elsewhere in the DRP. Accordingly, the district court was correct to deny vacatur here as well.

**\*\*\***

For these reasons, the judgment of the district court is AFFIRMED.

No. 19-20042

JAMES C. HO, Circuit Judge, dissenting:

The district court lacked jurisdiction to decide this case. So I would vacate the judgment and dismiss for lack of jurisdiction. I respectfully dissent.

\* \* \*

Arbitration agreements are contracts—and contracts are ordinarily a matter of state law. *See, e.g.*, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("[A]rbitration is a matter of contract."); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) ("[T]he interpretation of an arbitration agreement is generally a matter of state law.").

Disputes arising out of arbitration thus belong in state court. Arbitration disputes may also be brought in federal court, if Congress so authorizes.

Arbitrations between diverse parties may of course be brought in federal court under the general diversity jurisdiction statute. 28 U.S.C. § 1332. For arbitration disputes between non-diverse parties, however, federal courts must point to statutory authority conferring jurisdiction over such matters.

The Supreme Court has held that the Federal Arbitration Act confers no federal jurisdiction. *See, e.g.*, *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) ("[The FAA is] something of an anomaly in the field of federal-court jurisdiction" in that it "bestow[s] no federal jurisdiction but rather require[es] an independent jurisdictional basis.") (quotations omitted).

Section 4 of the FAA, however, allows federal courts to exercise jurisdiction over certain arbitration disputes under 28 U.S.C. § 1331, the general federal question jurisdiction statute. Specifically, § 4 confers jurisdiction on federal courts over motions to compel arbitration, if the arbitration resolves federal questions. It does so by authorizing district courts to compel arbitration when federal jurisdiction would exist "save for [the arbitration agreement]." 9 U.S.C. § 4. In other words, a federal court may

"look through" the arbitration agreement to determine if it could have exercised jurisdiction over the underlying controversy. *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009).

This case, however, involves not a motion to compel arbitration under § 4, but a motion to vacate an arbitration award under § 10. Sections 9–11 of the Federal Arbitration Act authorize motions to confirm, vacate, and modify arbitration awards. None of those sections contain the "look through" language found in § 4. *Compare* 9 U.S.C. § 4 ("A party . . . may petition any United States district court which, *save for such agreement*, would have jurisdiction . . .") (emphasis added), *with* §§ 9–11 (lacking any similar language).

Fidelity to text thus compels me to conclude that the district court lacked jurisdiction in this case. Notably, neither the panel majority nor the parties claim any textual support for federal jurisdiction. Instead, they observe that there is a circuit split on the issue—and that under the "majority" view, the district court has jurisdiction despite the lack of textual support in §§ 9–11 of the FAA. I say "majority" view in quotes because it's only a 3-2 split—so it remains a "majority" view only because of our decision today. *Compare McCormick v. America Online, Inc.*, 909 F.3d 677, 682 (4th Cir. 2018) (choosing to "look through"); *Ortiz-Espinosa v. BBVA Sec. of P.R., Inc.*, 852 F.3d 36, 40 (1st Cir. 2017) (same); *and Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 373 (2nd Cir. 2016) (same), *with Magruder v. Fid. Brokerage Servs. LLC*, 818 F.3d 285, 287–89 (7th Cir. 2016) (declining to "look through"); *and Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 252–55 (3rd Cir. 2016) (same).

Rather than count circuits, I would follow the text wherever it leads. The panel majority responds that the text is absurd—that it makes no sense that Congress would confer federal jurisdiction over motions to compel under § 4, but not over motions to confirm, vacate, and modify under §§ 9–11. But there is nothing absurd about this dichotomy. Section 4 commences the arbitration

process.  Sections 9–11, by contrast, operate only after the issuance of the arbitration award.  This difference between a motion to compel arbitration and one to confirm or change its outcome "parallels the distinction . . . between an original federal claim and a dispute about its contractual resolution." *Goldman*, 834 F.3d at 255 (quoting *Magruder*, 818 F.3d at 288).

This approach is also consistent with how we treat settlements. *Magruder*, 818 F.3d at 288.  Like arbitration agreements, settlement agreements are matters of contract, designed to resolve disputes outside of the courtroom.  The enforcement of settlements is ordinarily a matter for state courts, not federal courts—even when a settlement happens to resolve federal questions.  *See id.* ("[I]f parties settle litigation that arose under federal law, any contest about that settlement needs an independent jurisdictional basis.") (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994)); *see also, e.g., Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 434 (5th Cir. 2002) (finding no jurisdiction in a dispute arising from a settlement of federal claims).  There is no reason to treat arbitration differently.

The panel majority also warns that my reading would create perverse incentives.  The majority worries that a careful litigant would "preserve federal jurisdiction" over a §§ 9–11 motion by first filing a motion to compel under § 4.  But the majority cites no case law that would permit such a stratagem.  *See also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (5th Cir. 1992) (allowing dismissal of a case following a motion to compel).  And if it is a problem, it is one that Congress can address.

Finally, the majority asserts that my approach would violate the "non-expansion rule" of the FAA, by giving § 4 a more expansive reading than §§ 9–11.  The majority contends that such an expansive approach "has been rejected by the Supreme Court"—namely, *Vaden*.  But *Vaden* instructs us to faithfully

follow the text of the FAA, including the unique language of § 4.  *See* 556 U.S. at 62 ("The text of § 4 drives our conclusion.").

I respectfully dissent.